UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MODERN AMERICAN RECYCLING                    CIVIL ACTION
SERVICES, INC.

VERSUS                                        NO: 10-3153

STEPHEN MICHAEL DUNAVANT AND                  SECTION: R(2)
DENSON SPENSE


**ORDER AND REASONS**

Before the Court is defendant Stephen Dunavant's motion to dismiss for lack of personal jurisdiction or, in the alternative, motion to transfer to the United States District Court for the Eastern District of Virginia.[1]  Because Dunavant has waived his challenge to personal jurisdiction and because he has not shown good cause for transfer under 28 U.S.C. § 1404(a), the Court DENIES Dunavant's motion.


I.    **BACKGROUND**

This diversity action arises out of an employment contract

---

[1]    (R. Doc. 19.)

executed in March 2007 between Dunavant and Modern American Recycling Services, Inc. (MARS).[2]  Under the contract, Dunavant was required to "locate, identify and pursue the purchase of ships and other vessels for scrap and/or demolition and scrapping; monitor the scrap market and transportation modalities to strategically purchase, sell and transport materials at the best possible market price; any and all other ventures, projects or business to which [MARS] may become associated or in which [MARS] engages."[3]  The contract also contains an "Outside Activities and Restrictive Covenant" clause, which restricted Dunavant from competing with MARS during the term of the contract and for one year after termination, without written consent.[4]  In addition, the contract provides "the proper venue for the institution of any action to enforce the terms of this agreement shall be in United States District Court for the UNITED STATES DISTRICT COURT for the EASTERN DISTRICT OF LOUISIANA, if filed in Federal Court . . . ."[5]

---

[2]     (R. Doc. 23-3 at 28-34.)  Dunavant is a Virginia resident and MARS is an Alabama corporation with its principal place of business in St. Tammany Parish, Louisiana.

[3]     (*Id.* at 30.)

[4]     (*Id.* at 32-33.)

[5]     (R. Doc. 1 at 2.)

According to MARS, Dunavant was responsible for overseeing and managing the MARS facility at Shirley Plantation in Charles City, Virginia.  MERS alleges that Dunavant engaged in the sale of scrap steel from the Shirley facility for his own profit from at least January 1, 2008 through August 15, 2008.[6]  Specifically, MARS alleges that, on at least fifty-one occasions, Dunavant personally sold steel belonging to MARS to Stratton Metals, LLC and was paid at least $217,357.70.[7]  MARS further alleges that Denson Spence, another MARS employee, sold steel belonging to MARS to Stratton Metals, LLC on at least thirty-one occasions for at least $22,149.75.[8]  Plaintiff claims that Dunavant, either alone or in concert with Spence, concealed the loss and misappropriated the steel.[9]  In addition, MARS alleges that it loaned Dunavant funds, the outstanding balance of which is $75,610.58.[10]

Dunavant now moves to dismiss the suit for lack of personal jurisdiction or, in the alternative, to transfer venue to the

---

[6]   (R. Doc. 1 at 4-5.)

[7]   (R. Doc. 1 at 5.)

[8]   (R. Doc. 1 at 5-6.)

[9]   (R. Doc. 1 at 7.)

[10]   (R. Doc. 1 at 8.)

Eastern District of Virginia.[11]

## II.   PERSONAL JURISDICTION

### A. Legal Standard

When a nonresident defendant moves the court to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to show that personal jurisdiction exists. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).  The allegations of the complaint, except as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiffs. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).  In making its determination, the Court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of . . . recognized [discovery] methods." *Id.*

A court has personal jurisdiction over a nonresident defendant if (1) the forum state's Long-Arm Statute confers personal jurisdiction over that defendant, and (2) the forum state's exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999).  Because Louisiana's Long-Arm Statute

---

[11]    (R. Doc. 19.)

4

extends jurisdiction to the full limits of due process, the
Court's focus is solely on whether the exercise of its
jurisdiction in this case satisfies federal due process
requirements. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d
331, 336 (5th Cir. 1999) (citing La. Rev. Stat. § 13:3201(B)).

The exercise of personal jurisdiction over a nonresident
defendant satisfies due process when (1) the defendant has
purposefully availed himself of the benefits and protections of
the forum state by establishing "minimum contacts" with that
state, and (2) exercising personal jurisdiction over the
defendant does not offend "traditional notions of fair play and
substantial justice." *Latshaw*, 167 F.3d at 211 (citing
*International Shoe Co. v. State of Washington*, 326 U.S. 310, 316
(1945)).

There are two ways to establish minimum contacts: specific
jurisdiction and general jurisdiction. *Wilson v. Belin*, 20 F.3d
644, 647 (5th Cir. 1994). General jurisdiction will attach, even
if the act or transaction sued upon is unrelated to the
defendant's contacts with the forum state, if the defendant has
engaged in "systematic and continuous" activities in the forum
state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466
U.S. 408, 414 n.9 (1984); *Wilson*, 20 F.3d at 647. Contacts
between a defendant and the forum state must be "extensive" to

satisfy the "systematic and continuous" test.  *Submersible Systems, Inc. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001).

Specific jurisdiction exists when a nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or related to those activities." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001); *Helicopteros*, 466 U.S. at 414 n.8.  The minimum contacts prong may be established by actions, or even just a single act, by the nonresident defendant who "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  Purposeful availment "must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Ruston Gas Turbines Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

## B. Discussion

As discussed above, when a nonresident defendant, such as Dunavant, moves to dismiss for lack of personal jurisdiction, the

6

burden is on the plaintiff to show that personal jurisdiction exists.  MARS submits the employment agreement executed between it and Dunavant,[12] which contains the following choice-of-forum provision:

> The parties agree that the proper venue for the institution of any action to enforce the terms of this agreement shall be in UNITED STATES DISTRICT COURT for the EASTERN DISTRICT OF LOUISIANA, if filed in Federal Court or the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana, if filed in State Court.[13]

In *Kevlin Services Inc. v. Lexington State Bank*, 46 F.3d 13 (5th Cir. 1995), the Fifth Circuit held that a valid contractual clause mandating that litigation take place in a particular forum establishes personal jurisdiction over a party to the contract in the state in which the forum is located.  *See id.* at 15 (explaining that the district court erred in refusing to enforce a forum-selection clause and in dismissing the suit for lack of personal jurisdiction); *see also Burger King*, 471 U.S. at 472 n.14 (noting that a litigant may waive his right to contest personal jurisdiction through a forum-selection provision).  A

---

[12]     In opposition to Dunavant's motion, MARS also submits the affidavits of Lynette Stewart, Phillip Mason, and Dwight Caton to establish that Dunavant spent considerable time in Louisiana while employed with MARS.  These affidavits are not competent evidence, however, as they are unsigned by the affiants and not notarized.

[13]     (R. Doc. 23 at 28.)

forum-selection clause in a written contract is *prima facie* valid
and enforceable. *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S.
585, 589 (1991). To overcome the presumption of validity, the
party challenging the forum-selection clause has the "heavy
burden" of demonstrating that enforcement of the clause would be
unreasonable under the circumstances. *Mitsui & Co. (USA), Inc.
v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997). In general, a
court will find it unreasonable to enforce a forum-selection
clause that is the product of fraud or overreaching, violates
public policy, or effectively deprives a party of his day in
court. *See id.*

Dunavant has made no showing that the forum-selection clause
in his employment contract with MARS is unreasonable. Instead,
he contends that the clause does not establish personal
jurisdiction because it "was not exclusive for this District" and
"contains no terms submitting disputes to this District."[14]
Dunavant's argument, however, is belied by the clear language of
the forum-selection clause, which identifies the Eastern District
of Louisiana as the proper forum for actions to enforce the terms
of the employment agreement brought in federal court. Dunavant
further contends that the choice-of-forum clause should not be

---

[14]    (R. Doc. 19-1 at 1-2.)

enforced because MARS terminated the contract in August 2010, before bringing its action against him and because "the Contract contains no agreement that any of its terms . . . would survive termination."[15]  Dunavant provides no support for his contention, however, and courts addressing this argument have squarely rejected it.  *See, e.g.*, *Tristate HVAC Equipment, LLP v. Big Bear Solar, Inc.*, --- F. Supp. 2d ---, 2010 WL 4139285, at *12-13 (E.D. Pa. 2010) (explaining that to adopt the argument would "significantly limit the intended scope of the forum-selection clause"); *Texas Source Group, Inc. v. CCH, Inc.*, 967 F. Supp. 234, 238 (S.D. Tex. 1997) (finding that the forum-selection clause should be enforced, even though the agreement had expired, because the dispute arose out of the agreement); *Young Women's Christian Ass'n v. HMC Entertainment, Inc.*, 1992 WL 279361, at *4 (S.D.N.Y. 1992) (same); *see also* 13 *Corbin on Contracts* § 67.2 at 12 ("Although termination and cancellation of an agreement extinguish future obligations of both parties to the agreement, neither termination nor cancellation affect those terms that relate to the settlement of disputes or choice of law or forum selection clauses.").

Because Dunavant has not overcome the presumption of the

_____

[15]    (R. Doc. 19-1 at 2.)

9

forum-selection clause's validity, the Court's exercise of personal jurisdiction over him is proper.  *See Kevlin*, 46 F.3d at 15; *Ostrowiecki v. Aggressor Fleet, LTD*, 2008 WL 2313140, at *3 (E.D. La. 2008) ("[T]he plain language of the [forum-selection] clause provides that [defendant] waived any objection to this Court's exercise of jurisdiction over it."); *American Airlines, Inc. v. Rogerson ATS*, 952 F. Supp 377, 381 n.5 (N.D. Tex. 1996) ("A party who consents to jurisdiction in a forum-selection clause should not later be able to claim that such jurisdiction violates due process."); *compare Brammer Operating Co., LLC v. Pathfinder Exploration, LLC*, 2008 WL 400352, at *2 (W.D. La. 2008) ("Had Defendants agreed not only to arbitrate but to litigate in Shreveport, there would be little doubt that their objection[] to personal jurisdiction . . . would fail.") (citing *Kevlin*, 46 F.3d at 15).

## III. VENUE

### A.  Legal Standard

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses" and "in the interest of justice," the Court may transfer an action to any other district where the plaintiff could have filed suit.  Before a defendant can establish that transfer is proper under section 1404, he must first demonstrate

10

that the district to which he seeks transfer would have been an appropriate venue had the plaintiff filed the action there. *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960); *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).  The defendant must then show "good cause" for transfer.  *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).  To show good cause, a defendant "must satisfy the statutory requirements and clearly demonstrate that a transfer is for the convenience of parties and witnesses, in the interest of justice." *Id.* (internal quotation marks omitted).  When the transferee venue is not clearly more convenient, the reviewing court should respect the plaintiff's choice of venue.  *Id.*

In evaluating whether the defendant has shown good cause, the district court must consider the private and public interest factors articulated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  *See In re Volkswagen of America, Inc.*, 545 F.3d at 315.  The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious, and inexpensive. *See id.*  The public interest factors are (1) the administrative difficulties flowing from court congestion; (2) the local

11

interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.  *Id.*  While the *Gilbert* factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive, and no single factor is of dispositive weight.  *Id.* (citing *Action Indus.*, *Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)).  Where a valid forum-selection clause exists in an agreement between the parties, the forum-selection clause "will be a significant factor that figures centrally in the district court's calculus." *Stewart Organization, Inc. v. Rioch Corp.*, 487 U.S. 22, 29 (1988); *see also Receivables Exchange, LLC v. Suncoast Technology*, 2011 WL 446661, at *4 (E.D. La. 2011) (indicating that the existence of a forum-selection clause should be considered along with the private and public interest factors). The forum-selection clause should receive neither dispositive weight nor no consideration, "but rather the consideration for which Congress provided in § 1404(a)."  *Stewart*, 487 U.S. at 31.

B.  **Discussion**

The parties do not dispute that the MARS could have brought the case in the Eastern District of Virginia.  The Court will

thus consider whether Dunavant has shown "good cause" for a transfer there.  Dunavant argues that transfer is appropriate because he is a resident of Virginia, the alleged conduct occurred within the Eastern District of Virginia, and the "pertinent witnesses," including Dunavant's co-defendant, Denson Spence, reside there.[16]  MARS, for its part, contends that the Eastern District of Louisiana is more convenient because its principal place of business is in Louisiana and because "most of the documents relating to this matter are within the district."[17]

Before addressing the *Gilbert* public and private interest factors, the Court notes that the forum-selection clause in Dunavant's employment contract, specifying that venue for a federal action to enforce the terms of the contract "shall be in the UNITED STATES DISTRICT COURT for the EASTERN DISTRICT OF LOUISIANA," weighs heavily in favor of retaining venue.  *See Stewart*, 487 U.S. at 33 (Kennedy, J., concurring) ("[T]he authority and prerogative of the federal courts . . . should be exercised so that a valid forum-selection clause is given controlling weight in all but the most exceptional circumstances.").  As discussed above, Dunavant has made no

---

[16]   (R. Doc. 31 at 4.)

[17]   (R. Doc. 23 at 8.)

showing that the forum-selection clause in his employment contract is unreasonable.  Nor has Dunavant attempted to establish that the forum-selection clause is unfair in light of the parties' relative bargaining power.  *See Stewart*, 487 U.S. at 29 (directing the district court on remand to address any potential unfairness resulting from the possible uneven bargaining power of the parties).  As such, Dunavant faces a high hurdle in showing that transfer is nonetheless appropriate under the *Gilbert* factors.  *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) ("[T]he clear import of the Court's opinion [in *Stewart*] is that the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors."); *see also Terra International, Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 696-97 (8th Cir. 1997) (finding no abuse of discretion in the district court's decision to transfer because the private and public interest factors did not "overwhelmingly favor" venue in a district other than the one specified in a forum-selection clause).

    1. <u>Private Interest Factors</u>

    *Relative Ease of Access to Sources of Proof*

Despite the decreased significance of this factor in light of electronic transfers of information, *RLI Ins. Co. v. Allstate*

14

*Mut. Ins. Co.*, 2008 WL 2201976, at *2 (N.D. Tex. 2008), the relative ease of access to sources of proof is still a factor to consider in resolving a transfer motion.  *See In re Volkswagen of Am., Inc.*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now that it might have absent recent developments does not render this factor superfluous."). Dunavant points out that "the allegedly misappropriated scrap metal is located in Virginia" and that "the scrap metal was shipped from Virginia."[18]   MARS contends that, while some documents may be subpoenaed from vendees in the Virginia area, the majority of documentary evidence will come from the MARS office in Mandeville, Louisiana.  Although the Court acknowledges that where the alleged misconduct took place is a relevant consideration, Dunavant offers no specifics as to the nature of the evidence located in Virginia or as to the difficulties of production.  As such, Dunavant has not met his burden to show that there would be greater access to sources of proof in the Eastern District of Virginia.  The Court thus finds that this factor does not weigh in favor of transfer.

   *Availability of Compulsory Process and Cost of Attendance of*

---

[18]   (R. Doc. 31 at 4.)

*Willing Witnesses*

Courts recognize the availability and convenience of the witnesses as an important factor in a section 1401(a) analysis. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) ("One important factor in a § 1404(a) calculus is the convenience of the witnesses."); *Employers Mutual Casing Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010) ("The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)."); *Alexander v. Wackenhut Corp.*, 2007 WL 1728701, at *2 (E.D. La. 2007) ("The two most important considerations on the issue of venue under 28 U.S.C. § 1404(a) are the parties' access to witnesses and their access to other sources of proof.").  But the party moving for transfer must do more than "make a general allegation that certain key witnesses are needed." *Hills v. Brinks, Inc.*, 2008 WL 243944, at *5 (E.D. La. 2008).  The moving party must "specifically identify the key witnesses and outline the substance of their testimony." *Id.; see also Z-Tel Communications, Inc. v. SBC Communications, Inc.*, 331 F. Supp. 2d 567, 574 (E.D. Tex. 2004).

Federal Rule of Civil Procedure 45(b)(2) gives the district court power to subpoena any witness within 100 miles of the trial, deposition, or hearing.  When the distance of a venue is more than 100 miles from the location of the witnesses, the

16

inconvenience to the witnesses increases in direct proportion to the distance to be traveled. *In re Volkswagen AG*, 371 F.3d at 204-05. The Court recognizes that New Orleans is more than 100 miles from the Eastern District of Virginia. Dunavant, however, does not specifically identify witnesses, other than his co-defendant Spence, who would be required to travel to Louisiana or outline the substance of their testimony. Instead, he vaguely asserts that the "pertinent witnesses" all reside in Virginia. Dunavant's conclusory statements are insufficient to meet his burden of showing that the Eastern District of Virginia would be a more convenient forum for the witnesses in this case. *See Central Progressive Bank v. Kuntz*, 2008 WL 5264260, at *6 (E.D. La. 2008) (finding that defendants had not met their burden of showing that transfer was appropriate, in part, because defendants had not explained who the witnesses were that would have allegedly been inconvenienced). The Court thus finds that this factor does not weigh in favor of transfer.

    *Other Practical Problems*

    Trial has not yet been scheduled in this matter. Since this case is still in its early stages, a transfer would not result in delay. A transfer would, however, result in prejudice to MARS. The Court finds that transferring this litigation to Virginia

would merely shift the inconvenience of the litigation from
Dunavant to MARS.  Because a plaintiff's choice of forum deserves
deference, a transfer should not be made when the only practical
effect is to shift the inconvenience from the moving party to the
non-moving party.  *See Robinson v. Giarmarco & Bill, P.C.*, 74
F.3d 253, 260 (11th Cir. 1996) (finding that the district court
did not abuse its discretion in denying transfer when the court
found that transferring the case would merely shift inconvenience
from the defendants to the plaintiff); *In re FEMA Trailer Lit.*,
2009 WL 4723138, at *2 (E.D. La. 2009) ("The Court will not order
a transfer if the result is to shift the inconvenience from one
party to another.").  Accordingly, the Court finds that the
convenience of the parties weighs against transfer.

   2. <u>Public Interest Factors</u>
   *Administrative Convenience*
   The parties do not suggest that this case presents any
particular administrative difficulties or threatens to clog any
court's docket.  Further, MARS is a corporation with its
principal place of business in Louisiana, and Dunavant was a MARS
employee at the time of the alleged misconduct.  That the alleged
misconduct may have occurred in Virginia does not negate that
this Court has a sufficiently proper stake in the resolution of

MARS's claims.  Accordingly, Dunavant has not shown that this factor weighs in favor of transfer.

   *Local Interest*

   It is well-established that the local interest in deciding local issues at home favors transfer to a venue that will vindicate such an interest.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).  The Fifth Circuit has noted that when the underlying facts of a case are overwhelmingly tied to one locale, then the place of the alleged wrong "is a consideration that properly can be considered within the analysis of the local interest in having localized interests decided at home." *In re Volkswagen*, 506 F.3d 376, 387 n.7 (5th Cir. 2007), *overturned on other grounds*, 545 F.3d at 304.  Because the alleged theft occurred in Virginia, this factor weighs in favor of transfer.  But it does so only slightly because MARS is citizen of Louisiana, and Louisiana has an interest in the enforcement of contracts involving its corporate citizens.  *See Central Progressive Bank*, 2008 WL 5264260 at *4, 7 (explaining that the public interest factors militate in favor of finding that transfer is not necessary because, among other reasons, Louisiana has a substantial interest in the enforcement of a contractual agreement to which a Louisiana corporation is a party).

*Forum Familiarity and Conflicts of Law Problems*

There is no indication that this case raises any conflicts of law issues.  The employment contract at issue specifies that it "shall be governed by and construed according to the laws of the State of Louisiana."[19]  This Court is likely more familiar with Louisiana law than a Virginia court, particularly given Louisiana's civil law tradition.  Further, even if the Court were required to apply Virginia law in resolving MARS's action, the Court is not persuaded that the difficulty of the legal issues presented by this matter weigh in favor of transfer.

Considering all of the section 1404(a) factors, the Court finds that the proposed transferee district is not clearly more convenient than this forum.  This is not a situation in which plaintiff has selected a forum that is completely unrelated either to any of the parties or the events giving rise to the case.  To the contrary, the employment agreement executed between Dunavant and MARS specifically identifies the Eastern District of Louisiana as the proper venue.  Accordingly, plaintiff's choice of forum deserves due deference.

---

[19]    (R. Doc. 23-3 at 34.)

IV.  **CONCLUSION**

For the foregoing reasons, the Court DENIES Dunavant's motion.

New Orleans, Louisiana, this <u>31st</u> day of March, 2011.

                                          _____
                                                SARAH S. VANCE
                                  UNITED STATES DISTRICT JUDGE