UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MODERN AMERICAN RECYCLING SERVICES, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-3153** |
| **STEPHEN MICHAEL DUNAVANT and DENSON SPENCE** | **SECTION: G(4)** |

### ORDER AND REASONS

Before the Court is Defendant Stephen Michael Dunavant's ("Dunavant") Motion for Stay Pending the Resolution of Directly Related, Newly-Disclosed Criminal Proceedings in the United States District Court, Richmond, Virginia ("Motion for Stay").[1] Plaintiff Modern American Recycling Services, Inc. ("MARS") filed its response in opposition on March 5, 2012.[2] Having considered the motion, the response, the Record, and the applicable law, for the following reasons, the Court will deny Dunavant's Motion for Stay.

### I. Background

*A. Procedural and Factual Background*

On September 16, 2010, MARS filed its complaint against Dunavant and against Denson Spence ("Spence") (collectively, "Defendants") in this action brought under this Court's diversity jurisdiction.[3] The case arises from an employment contract entered between Dunavant and MARS;

---

[1] Rec. Doc. 54.

[2] Rec. Doc. 58.

[3] Rec. Doc. 1. MARS asserts that it is an Alabama corporation with its principal place of business in St. Tammany Parish, Louisiana, that Defendants are residents of Virginia, and that the amount in controversy exceeds $75,000, exclusive of interest and costs. *Id.* at ¶ 1.

1

Dunavant was "entrusted to oversee and manage the operation" of a waterfront property, the Shirley Plantation in Charles City, Virginia, which MARS operated as a ship-breaking and steel scrapping facility.[4]

In its complaint, MARS alleges "that Mike Dunavant individually and/or in concert with Denson Spence engaged in a systematic scheme from the Shirley Plantation facility of conversion of vessels, barges, steel products, and scrap steel owned by MARS or intended for MARS's account to his own use, benefit, and profit . . ."[5] in violation of "the clear and unambiguous terms of Mike Dunavant's employment contract with MARS."[6]  MARS asserts claims against Dunavant for breach of contract, conversion, and misappropriation; MARS also alleges that Dunavant breached his fiduciary duty to MARS and that Dunavant owes sums of money to MARS that were loaned or advanced to him as part of his employment contract.[7]

Dunavant previously filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, motion to transfer to the United States District Court for the Eastern District of Virginia.[8] However, Chief Judge Sarah Vance denied that motion on March 31, 2011.[9]  Dunavant then filed his answer in this action on April 12, 2011.[10]  On October 6, 2011, this case was reassigned from

---

[4] *See* Rec. Doc. 1 at ¶ 9.

[5] *Id.* at ¶ 16.

[6] *Id.* at ¶¶ 10-12.

[7] *Id.* at ¶¶ 20-23.

[8] Rec. Doc. 19.

[9] Rec. Doc. 38.

[10] Rec. Doc. 39.

Judge Vance to this Section, Section "G".[11] Dunavant filed the instant Motion for Stay on February 21, 2012,[12] and MARS filed its opposition on March 5, 2012.[13]

### B. *Motion for Stay*

In Dunavant's motion, he argues that this civil case should be stayed "pending the resolution of directly-related federal criminal proceedings before the United States District Court, Eastern District of Virginia, Richmond, Virginia."[14] Dunavant states that he only learned of the criminal proceedings on February 16, 2012, despite the fact that MARS has allegedly known and assisted in the investigation "since at least August, 2010."[15] According to Dunavant, an assistant U.S. Attorney for the Eastern District of Virginia and the FBI agent assigned to the case have confirmed that Dunavant and Spence are criminal targets in a Grand Jury investigation in the Eastern District of Virginia.[16] Thus, Dunavant argues that his and Spence's Fifth Amendment rights are threatened if the instant case is allowed to proceed.[17] Also according to Dunavant, "[the] ongoing criminal, federal investigation is on the **exact** allegations that MARS raises in this case – namely whether he [Dunavant] misappropriated and sold the property which MARS alleges he misappropriated and sold for his own benefit and, that he is a criminal target (along with, co-defendant here, Denson Spence)

---

[11] Rec. Doc. 47.

[12] Rec. Doc. 54.

[13] Rec. Doc. 58.

[14] Rec. Doc. 54-1 at p. 1.

[15] *Id.* at p. 3.

[16] *Id.* at p. 2.

[17] *Id.* at p. 2.

3

of that investigation."[18] In support of his argument, Dunavant relies heavily on this Court's opinion in *Waste Management of Louisiana, LLC v. River Birch, Inc., et al.*[19] Dunavant argues that "*Waste Management* presented the court with a fact pattern almost identical to the one in this case. A private litigant had brought suit against the defendant seeking a civil recovery based on the same facts as were the subject of an ongoing criminal investigation."[20] In response, MARS seeks to distinguish the instant case from *Waste Management*.

## II.  Law and Analysis

### A. *Standard for a Stay*

There is no question that a district court has inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants,"[21] nor is there a question that this authority includes the district court's wide discretion to grant a stay in a pending matter.[22] When "the interests of justice seem[] to require such action," a court may exercise its discretion to stay civil proceedings, postpone discovery, or impose protective orders and conditions.[23] Likewise, it is well recognized that a district court "may stay a civil proceeding during

---

[18] *Id.* at p. 3.

[19] No. 11-2405, 2012 WL 520660 (E.D. La. Feb. 15, 2012) (Brown, J.).

[20] Rec. Doc. 54-1 at p. 4.

[21] *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

[22] *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990).

[23] *United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970).  *See also Mayo v. Tri-Bell Indus.*, 787 F.2d 1007, 1012 (5th Cir. 1986).

4

the pendency of a parallel criminal proceeding,"[24] and indeed, a district court may sometimes stay a civil action "until the criminal case or the likelihood of a criminal case is ended."[25] Therefore, although "[t]he simultaneous prosecution of civil and criminal actions is generally unobjectionable,"[26] a stay of a pending civil action may be appropriate "when there is a real and appreciable risk of self-incrimination."[27]

However, whether to stay a civil action pending resolution of a related criminal proceeding is a matter left to the court's discretion,[28] and the Fifth Circuit has determined that such a stay may be warranted only where "special circumstances" exist such that a party would suffer substantial and irreparable prejudice otherwise.[29] Therefore, the "the mere possibility of prejudice" to the criminal defendant arising from discovery in the civil case does not necessarily warrant a stay.[30] The burden to show that a stay is warranted rests on the movant,[31] and in determining whether a civil action should be stayed due to a criminal matter, Courts within the Fifth Circuit have looked to six factors.[32]

---

[24] *SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 668 (5th Cir. 1981).

[25] *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 655 (5th Cir. 2007) (citing *Wallace v. Kato*, 549 U.S. 384, 394 (2007) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996))).

[26] *First Fin. Grp.*, 659 F.2d at 667.

[27] *Brumfield v. Shelton*, 727 F.Supp. 282, 284 (E.D. La. 1989) (Mentz, J.) (citing *Kordel*, 391 U.S. at 8-9).

[28] *Kordel*, 397 U.S. at 12 n. 27.

[29] *First Fin. Grp.*, 659 F.2d at 668. *See also United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983).

[30] *In re Ramu Corp.*, 903 F.2d at 320.

[31] *Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982); *Drummond v. Fulton Cnty. Dep't of Family & Children's Servs.*, 532 F.2d 1001, 1002 (5th Cir. 1976).

[32] *Alcala v. Tex. Webb Cty.*, 625 F.Supp.2d 391, 399 (S.D. Tex. 2009) (collecting district court cases within the Fifth Circuit applying this test). *See also Lebouef v. Global X-Ray and Testing Corp.*, No. 07-5755, 2008 U.S. Dist. LEXIS 6470, at *4 (E.D. La. Jan. 29, 2008) (Barbier, J.) ("To determine whether special circumstances exist, the court must 'balance the competing constitutional and procedural interests of the parties,' as illustrated through

These factors are:

1. The extent to which the issues in the criminal case overlap with those presented in the civil case;
2. The status of the criminal case, including whether the defendant has been indicted;
3. The private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by the delay;
4. The private interests of and burden on the defendant;
5. The interests of the courts; and
6. The public interest.[33]

### B. Application of Factors

#### 1. Extent of Overlap Between Civil and Criminal Cases

Where there exists great overlap between the civil and criminal proceedings, courts often feel compelled to grant a stay.[34] Indeed, some courts have found that "the similarity of issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay."[35] In determining whether issues in civil and criminal cases are related, courts impose a "common-sense, fact-bound analysis."[36] However, it is difficult for a court to "determine with certainty the degree of overlap between [the civil] action and the criminal

---

the six-factor test . . . .") (citation omitted).

[33] *Id.*

[34] *Astoria Entm't, Inc. v. Edwards*, No. 98-3359, 1999 U.S. Dist. LEXIS 6040, at *3 (E.D. La. Apr. 22, 1999) (Duval, J.).

[35] *Dominguez v. Hartford Fin. Servs. Grp., Inc.*, 530 F.Supp.2d 902, 906-07 (S.D. Tex. 2008). *See also Lebouef*, 2008 U.S. Dist. LEXIS 6470, at *4.

[36] *In re Ramu Corp.*, 903 F.2d at 319.

6

investigation" when no indictment has been handed down.[37]

Here, because Dunavant has not yet been indicted,[38] it is simply a matter of speculation whether the civil action and the pending criminal investigation overlap.  Although Dunavant asserts that this matter "involves exactly the same conduct as that of the criminal investigation,"[39] he has not provided sufficient evidence from which this Court could come to that same conclusion.  Unlike in *Waste Management*, where the civil suit was based upon information obtained from the criminal investigation, there is no obvious, intuitive overlap here.  Furthermore, the conduct in question in *Waste Management* was highly documented and public, such that this Court could better gauge the degree of overlap.  Here, the only indication this Court has that the conduct at issue here is related to an alleged criminal investigation in the Eastern District of Virginia is Dunavant's own assurances to that effect and a single subpoena served upon Stratton Metal, LLC, seeking records pertaining to "any and all business dealings or transactions" with Dunavant, MARS, or Spence.[40]  The Court finds this to be insufficient, and as a result, the Court finds that this factor does not support the granting of a stay in the present civil action.

### 2. *Status of Criminal Proceedings*

Generally, a stay of a civil case is "most appropriate" when a party to the civil action has

---

[37] *S.E.C. v. AmeriFirst Funding, Inc.*, No. 07-1188, 2008 WL 866065, at *3 (N.D. Tex. Mar. 17, 2008). *See also Fresenius*, 571 F.Supp.2d 758, 762 (W.D. Tex. 2008).

[38] Dunavant not only provides no evidence of an indictment, but also he does not even make such an assertion.  Additionally, MARS specifically states that "[a]s of the filing of the Motion for Stay by Dunavant, no search warrants or subpoenas have been served on Dunavant pursuant to the criminal investigation" and "no charges have been filed or indictments issued against Dunavant."  *See* Rec. Doc. 58 at p. 2.

[39] Rec. Doc. 54-1 at p. 4.

[40] Rec. Doc. 54-3 at p. 6.

already been indicted for the same conduct.[41] Although this Court noted in *Waste Management* that the fact that criminal charges had not yet been filed did not "militate against the granting of a stay of discovery,"[42] the situation there was vastly different from the situation presented here. In *Waste Management* there were ample indications, including plaintiff's own admissions, not only that "the criminal investigation at hand [was] quite active" but also that an indictment was "imminent."[43] There, in addition to allegations that the defendants were the targets of an ongoing federal criminal investigation, importantly, several co-conspirators had been indicted or had pled guilty.[44]

Here, however, there is no evidence to indicate that the investigation is active or that an indictment is imminent. Again, the only evidence even before this Court regarding the pending criminal investigation is Dunavant's conclusory statements to that effect, contained within Dunavant's memorandum in support of his motion,[45] and a single subpoena.[46] No target letter from any official source has been provided; the Court has only Dunavant's hearsay assurances that he is a target.[47] In *Waste Management*, the Court could look to the indictments and pleas of co-conspirators to reassure itself that indictment was likely imminent; in contrast, the investigation

---

[41] *See Fresenius*, 571 F.Supp.2d at 762-63.

[42] *Waste Management*, 2012 WL 520660, at *4 (quoting *SEC v. Offill*, No. 07-1643, 2008 WL 958072, at *3 (N.D. Tex. Apr. 9, 2008)).

[43] *Waste Management*, 2012 WL 520660, at *4.

[44] *Id.*

[45] *See* Rec. Doc. 54-1 at p. 2. Dunavant states that an assistant U.S. Attorney in the Eastern District of Virginia and the FBI agent assigned to the case have confirmed to defense counsel that Dunavant is a criminal target of a Grand Jury investigation in the Eastern District of Virginia. *Id.*

[46] Rec. Doc. 54-3 at p. 6.

[47] Rec. Doc. 54-1 at p. 2.

Dunavant relies upon has been ongoing, according to MARS, for nearly a year,[48] and there is no indication that an indictment will be handed down soon, if ever. Accordingly, this factor also weighs against this Court granting a stay in the present matter.

   *3. Plaintiff's Interest*

First, the Court notes that a plaintiff has an interest in the speedy resolution of its case. Here, this case has been pending before the Court since September 16, 2010, and the Motion for Stay was only filed on February 21, 2012, only a few months prior to the scheduled trial date. Although the Court does not fault Dunavant for his eleventh hour filing, given that Dunavant only recently became aware of the pending criminal investigation, this does not alter the fact that this puts the present case in a very different posture than that of *Waste Management*, the case on which Dunavant so heavily relies for support of his motion here. Indeed, in *Waste Management* there was not yet a scheduling order in place. Here, MARS has already put forth significant time and effort in preparing for the scheduled trial date, and MARS has an important interest in seeing the case proceed to trial as scheduled.

Next, the Court notes that, with time, the memories of witnesses fade and documents and other evidence can be lost or destroyed.[49] Here, MARS argues that it will be prejudiced by a stay because it might result in faded memories, lost evidence, and the difficulty or the impossibility of tracing funds that resulted from the misappropriation of materials.[50] Unlike in *Waste Management*,

---

[48] Rec. Doc. 58 at p. 2.

[49] *See Alcala*, 625 F.Supp.2d at 405.

[50] *See* Rec. Doc. 58 at p. 10.

9

to the Court's knowledge, there does not exist evidence already seized – and therefore, already preserved – by the FBI. And although a number of depositions have already been taken, according to MARS, many depositions are still necessary. Accordingly, MARS argues, and this Court finds it persuasive, that delay will significantly prejudice MARS's ability to put forth its case.

The only argument advanced in opposition by Dunavant regarding this third factor, the plaintiff's interest, is that, like in *Waste Management*, "the criminal investigation might very well benefit the plaintiff by gathering and preserving information which the plaintiff could use in later litigation."[51] However, in *Waste Management*, the plaintiff had relied upon information obtained from the criminal investigation as the primary basis of its case. To the contrary here, there is no indication that MARS has relied upon information obtained from the criminal investigation, and MARS has already put forth much effort in developing its case through depositions and other discovery. Therefore, the Court finds it of little consequence whether MARS might conceivably benefit from additional information that could be uncovered in the criminal investigation. Accordingly, this Court finds that the prejudice to MARS in delaying this action would be significant, and this factor weighs against granting a stay.

*4. Defendant's Interests and Burden*

The primary burden on Dunavant alleged here is that allowing this suit to proceed will create a significant risk of endangering his Fifth Amendment rights. However, it is not unconstitutional to force a defendant to choose between the negative inferences drawn from his silence and his Fifth

---

[51] Rec. Doc. 54-1 at p. 5.

Amendment privilege.[52]  Furthermore, one asserting prejudice to his Fifth Amendment rights must demonstrate "more than the mere possibility of prejudice."[53]  Instead, the movant must "make a specific showing of the harm it will suffer without a stay and why other methods of protecting its interests are insufficient."[54]

Although the defendants in *Waste Management* were faced with the same choice between defending against a lawsuit and endangering their Fifth Amendment rights, the status of the criminal investigation indicated that this was a choice that was all but imminent.  At this point, the Court is not convinced that Dunavant likely will be forced to make such a decision.[55]  Additionally, in *Waste Management*, the Court determined that other methods of protecting the defendants' rights, namely through staged discovery, were problematic because it would likely result in duplicative discovery and require much oversight by the Court.  Entering a stay at the early stage of the proceeding in *Waste Management* avoided those problems.  Here, however, considering the amount of discovery already conducted and considering the fact that Dunavant provided information while unaware of the criminal matter, entering a stay at this stage would not avoid the Fifth Amendment concerns.  There are, however, other procedural devices that might be more effective here.  The Court also notes that MARS has indicated its willingness to proceed without "Dunavant's testimony or his

---

[52] *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).

[53] *In re Ramu Corp.*, 903 F.2d at 320 ("[A]llegations of prejudice to criminal cases from civil discovery are 'conclusory and insufficient to warrant a stay . . . .'") (quoting *United States v. Banco Cafetero Intern.*, 107 F.R.D. 361, 366 (S.D.N.Y. 1985)).

[54] *Id.*

[55] Indeed, the Court notes that MARS argues that Dunavant cannot make such a decision because he has, MARS alleges, already waived his Fifth Amendment rights based on prior testimony.  The Court need not address this issue at this time.

11

documents,"[56] such that Dunavant's Fifth Amendment rights would not be implicated.

In light of the foregoing, the potential prejudice to Dunavant's Fifth Amendment rights is speculative at best, and more importantly, a stay would not address the potential prejudice to Dunavant's Fifth Amendment rights regarding information already provided. Accordingly, the Court finds that this factor does not weigh in favor of a stay.

*5. The Court's Interest*

"In determining the propriety of a stay, a court can consider its own interests in efficient administration and judicial economy," and courts have an interest in moving cases forward expeditiously.[57] "Further, before granting a stay pending the resolution of another case, the court must carefully consider the time reasonably expected for resolution of the 'other case,' in light of the principle that 'stay orders will be reversed when they are found to be immoderate or of an indefinite duration.'"[58]

In support of his position, Dunavant notes that considerations of "judicial economy and expediency" factored into this Court's decision to grant a stay in *Waste Management*. However, in that case, the Court was faced with the prospect of duplicative discovery. Here, in contrast, the majority of discovery has already been completed. Further, given the uncertainty of whether an indictment will be handed down, there exists a real possibility that this action, which has been

---

[56] Rec. Doc. 58 at p. 5.

[57] *Fresenius*, 571 F.Supp.2d at 765.

[58] *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983) (quoting *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982) (vacating an indefinite and protracted stay where the court had not even weighed competing interests in ordering the stay)).

pending in the Eastern District of Louisiana since September 16, 2010, would be stayed for no reason, and the Court has no way to guess how long such a stay might last. As a result, considerations of judicial expediency necessitate that this case not be postponed indefinitely on the chance that a criminal case *might* be brought based on the same actions that constitute the basis of this suit. Yet again, a stay appears unwarranted.

### 6. The Public Interest

The Court first notes that, importantly, the public has an interest in the prompt resolution of civil cases.[59] Next, the only public interest argument presented by Dunavant is that the public benefits from the "economical use of the court's resources" and that staying the present action would result in a more economical use of those resources.[60] However, in considering the court's interest, this Court has already determined that there would be no significant economical advantage to the staying of this action. Therefore, the public's interest in the prompt resolution of matters on this Court's docket will control, and as with the previous five factors, this factor weighs against staying this action.

Therefore, the evaluation of the relevant factors weighs overwhelmingly against a stay of the instant civil action. Dunavant has not carried his burden to demonstrate the type of "special circumstances" that would cause him to suffer the "substantial and irreparable prejudice" necessary for a court to grant a stay in this situation[61]; he has only indicated the mere possibility of prejudice,

---

[59] *Fresenius*, 571 F.Supp.2d at 765.

[60] Rec. Doc. 54-1 at p. 6 (citing *Waste Management*, 2012 U.S. Dist. LEXIS 18544 at *16).

[61] *First Fin. Grp.*, 659 F.2d at 668. *See also Little Al*, 712 F.2d at 136.

which is not enough to warrant a stay.[62]

### III.  Conclusion

For the reasons set forth above, the Court finds that Dunavant has not met his burden to demonstrate that a stay in this matter is warranted, particularly because there as yet exists no criminal indictment and Dunavant has failed to demonstrate that one is imminent.  Accordingly,

**IT IS ORDERED** that Dunavant's Motion for Stay is **DENIED**, but without prejudice to re-file if a criminal indictment is returned.

**NEW ORLEANS, LOUISIANA**, this  19th   day of April, 2012.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[62] *See In re Ramu Corp.*, 903 F.2d at 320.